UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PRICEWATERHOUSECOOPERS LLP HEALTH AND WELFARE BENEFITS PLAN &PRICEWATERHOUSECOOPERS LLP,<br>    *Plaintiffs*,<br><br>v.<br><br>ARTHUR A. MAYER & JAMES O. GASTON,<br>    *Defendants*. | No. 3:18-cv-526 (VAB) |

**RULING AND ORDER ON THE CROSS-MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR A MORE DEFINITE STATEMENT**

PricewaterhouseCoopers LLP Health and Welfare Benefits Plan and PricewaterhouseCoopers LLP (collectively "PricewaterhouseCoopers" or "PWC") brings this action against Arthur Mayer and James O. Gaston (collectively "Defendants") under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq*. ("ERISA") for medical payment reimbursement.

PricewaterhouseCoopers moves for summary judgment on its health insurance reimbursement and against Defendants' counterclaims. Motion for Summary Judgment by PricewaterhouseCoopers LLP, ECF No. 51; Motion for Summary judgment on Defendants' Counterclaim, ECF No. 68.

Defendants also move for summary judgment. Motion for Summary Judgment, ECF No. 58.

For the following reasons, the Court **GRANTS** PricewaterhouseCoopers's motions for summary judgment and **DENIES** Defendants' motion for summary judgment.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

PricewaterhouseCoopers is a self-funded employee welfare benefit plan under 29 U.S.C. § 1001. Amended Complaint, ECF No. 14 ("Am. Compl."). PricewaterhouseCoopers covered Mr. Mayer. *Id* at ¶ 5; Pamela Copeland Affidavit, ECF No. 52-4 ("Copeland Aff."). The PricewaterhouseCoopers Summary Plan Description gives full rights to PricewaterhouseCoopers to recover from employees or dependents for the cost of health benefits paid on their behalf under the PricewaterhouseCoopers health plan. Am. Compl. at ¶ 8. The plan description states in pertinent part:

RIGHT TO SUBROGATION/THIRD PARTY RECOVERY

> You shall cooperate with PWC and its agents in a timely manner to protect its legal and equitable rights to subrogation and reimbursement.
> . . .
> If a third party may be liable for a covered medical expense that you or your Dependent have incurred, the Plan has a right of subrogation to any claim that you or your Dependent have against the third party. The Plan will then be entitled to be paid back from any amount that you or your Dependent recover against the third party for any expenses that the Plan has had, and the recipient of any such recovered amounts shall hold the funds in constructive trust for the Plan. The Plan has a right of reimbursement against any recovery by you or your Dependents from a third party. No court costs or attorneys' fees may be deducted from the Plan's recovery without the Plan's express written consent and the Plan is not required to participate in or pay court costs or attorneys' fees to the attorney hired by you or your Dependents to pursue damages or personal injury claims. No so-called "fund doctrine" or "common fund doctrine" right shall defeat the Plan's rights. Regardless of whether you or your Dependents have been fully compensated or made whole, the Plan may collect from you or your Dependents the proceeds of any full or partial recovery that you or your Dependents or legal representative obtain, whether in the form of a settlement (either before or after any determination of liability) or judgment. The proceeds available for collection by PWC shall include, but not be limited to, any and all amounts whether designated in any

> settlement or judgment as economic damages, noneconomic damage, punitive damages, attorneys' fees or otherwise. You shall not, without PWC's written consent, settle any claim for an amount less than the amount that PWC has paid or advanced on your behalf.

*Id.*; Summary Plan Description, ECF No. 52-3, at 109.

On May 11, 2015, Mr. Mayer suffered injuries in an automobile accident. Am. Compl. at ¶ 9; *Mayer v. Kong* Litigation Complaint. ECF No. 52-6 ("*Mayer* Litigation Compl."). PricewaterhouseCoopers spent $44,167.59 for Mr. Mayer's health care in connection with those injuries. Am. Compl. at ¶ 9; Copeland Aff. at ¶ 11; Medical Payment Summary, ECF No. 52-5, at 4.

Mr. Gaston represented Mr. Mayer in the civil action arising from Mr. Mayer's accident in Connecticut Superior Court ("*Mayer* Litigation"). Am. Compl. at ¶ 6; *Mayer* Litigation Compl. at 4. Before the *Mayer* litigation settled, PricewaterhouseCoopers allegedly gave notice to Mr. Mayer, through Mr. Gaston, of PricewaterhouseCoopers's right of subrogation and reimbursement from all proceeds of payment, settlement, or judgment in the *Mayer* Litigation. Am. Compl. at ¶ 12; Copeland Aff. at ¶ 7.

PricewaterhouseCoopers alleges that Mr. Gaston settled the *Mayer* Litigation for at least $250,000. Am. Compl. at ¶ 11; Amended Answer to Amended Complaint with Special Defenses, Counterclaim against Plaintiff, ECF No. 64 ("Amended Answer"), at ¶ 11 ("Admitted that Mayer v. Long case settled for $250,000"). The Amended Complaint also alleges that Mr. Gaston holds or has disbursed part of the proceeds of the *Mayer* Litigation to himself, while no payment has been to PricewaterhouseCoopers. Am. Compl. at ¶ 13–14; *see also* Gaston Memorandum of Law in Support of Motion to Dismiss, ECF No. 20, at 5.

Defendants contend that the settlement did not fully compensate Mr. Mayer for his non-economic damages. James Gaston Affidavit, ECF No. 59-1 ("Gaston Aff."), at ¶ 5. Instead,

3

Defendants contend that PricewaterhouseCoopers paid for medical expenses related to a preexisting cervical condition, which was unrelated to the May 11, 2015 automobile collision. *Id.* at ¶ 7.

B. **Procedural History**

On March 28, 2018, PricewaterhouseCoopers filed its Complaint for equitable relief for medical bill payments under ERISA. Complaint, ECF No. 1.

On May 5, 2018, Mr. Mayer and Mr. Gaston moved for a more definite statement because PricewaterhouseCoopers did not specify which counts applied to Mr. Mayer and which applied to Mr. Gaston. Motion for a More Definite Statement, ECF No. 12. On November 1, 2018, the Court found this motion moot. Order, ECF No. 36.

On May 14, 2018, PricewaterhouseCoopers amended its Complaint, separating the allegations against Mr. Mayer and Mr. Gaston into separate counts. Am. Compliant, ECF No. 14.

On June 21, 2018, Mr. Gaston moved for nonsuit. Motion for Nonsuit, ECF No. 15. On November 1, 2018, the Court found this motion moot. Order, ECF No. 36.

On June 27, 2018, Mr. Mayer moved to dismiss the Complaint under Rule 12(b)(1). Motion to Dismiss, ECF No. 17. On July 13, 2018, Mr. Mayer moved to withdraw his motion to dismiss in its entirety. Motion to Withdraw, ECF No. 21. On August 2, 2018, the Court granted Mr. Mayer's motion to withdraw motion to dismiss. Order, ECF No. 27.

On June 27, 2018, Mr. Gaston moved to dismiss the claim brought against him under Rules 12(b)(1) and 12(b)(6). Motion to Dismiss, ECF No. 19. On July 13, 2018, Mr. Gaston moved to withdraw his motion to dismiss, as to the diversity of jurisdiction, while still preserving the claim that he is an inappropriate party to this action. Motion to Withdraw, ECF No. 22. On

August 2, 2018, the Court granted Mr. Gaston's motion to withdraw his 12(b)(1) claim. Order, ECF No. 27.

On August 17, 2018, PricewaterhouseCoopers opposed the remaining portions of Mr. Gaston's motion to dismiss claim, arguing that Mr. Gaston is a proper party to this action. Memorandum in Opposition to Defendant Gaston's Motion to Dismiss, ECF No. 28.

On December 10, 2018, the Court held a hearing on Mr. Gaston's motion to dismiss. Minute Entry, ECF No. 46.

On December 13, 2018, the Court denied Mr. Gaston's motion to dismiss. Order Denying Motion to Dismiss, ECF No. 47.

On January 31, 2019, PricewaterhouseCoopers moved for summary judgment, claiming a legal entitlement to reimbursement from the proceeds of the *Mayer* litigation settlement. Plaintiffs' Motion for Summary Judgment, ECF No. 51.

On February 20, 2019, Defendants filed their memorandum in opposition to Plaintiffs' motion for summary judgment. Memorandum in Opposition, ECF No. 57 ("Mem. in Opp. to Pl.'s MSJ").

On February 20, 2019, Defendants responded to the Amended Complaint with special defenses and counterclaims against PricewaterhouseCoopers. Answer with Special Defenses, Counterclaim against Plaintiffs, ECF No. 56. On March 4, 2019, PricewaterhouseCoopers moved for a more definite statement as to the Answer. Motion for a More Definite Statement as to Defendants' Answer, ECF No. 63. On March 12, 2019, Defendants amended their Answer to provide more clarity. Amended Answer to Amended Complaint with Special Defenses, Counterclaim against Plaintiffs, ECF No. 64 ("Am. Answer"). Defendants also objected to the motion for a more definite statement. Objection re Motion for More Definite Statement, ECF No.

65. On May 22, 2019, the Court found the motion for a more definite statement moot. Order, ECF No. 79.

On February 20, 2019, Defendants also moved for summary judgment, and argued that PricewaterhouseCoopers: (1) failed to disclose the experts necessary to prove its legal entitlement to the automobile settlement proceeds; (2) failed to disclose experts capable of distinguishing between injuries from the automobile collision and pre-existing conditions; (3) lacked evidence that the third-party tortfeasor compensated Mr. Mayer for his medical expenses; and (4) incurred civil penalties under 29 U.S.C. § 1132(c) that exceeded the claimed reimbursement. Motion for Summary Judgment, ECF No. 58.

On April 10, 2019, PricewaterhouseCoopers filed a memorandum in opposition to Defendants' motion for summary judgment. Memorandum in Opposition and in Response to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 67. PricewaterhouseCoopers also moved for summary judgment on Defendants' counterclaims in their Amended Answer. Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment on Counterclaim, ECF No. 68 ("Pls.' Mem. in Supp. of Counterclaim MSJ.").

On May 1, 2019, Defendants replied to PricewaterhouseCoopers's motion for summary judgment. Defendants' Reply to Plaintiffs' Response to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and Reply to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 76 ("Defs.' Response to Pl.'s Counterclaim MSJ.").

On May 29, 2019, the Court held a hearing on the parties' motions for summary judgment. Minute Entry, ECF No. 80.

## II. STANDARD OF REVIEW

A motion for summary judgment will be granted when the record shows no genuine issue

as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing specific facts to prove that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original). The moving party, however, may satisfy this burden by pointing to an absence of evidence to support the non-moving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When documentary evidence and sworn affidavits supporting a motion for summary judgment "demonstrate[] the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment then "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913 (DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding non-moving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment); *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007) ("[A] nonmoving party must present 'significant probative evidence to create genuine issue of material fact.'" (quoting *Soto v.*

7

*Meachum*, 3:90-cv-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *Dufort v. N.Y.C.*, 874 F.3d 338, 347 (2d Cir. 2017). A court will not credit conclusory allegations or denials. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). After drawing all inferences in favor of the non-moving party, if the court finds that no reasonable trier of fact could find in the non-movant's favor, the court will find for the moving party as a matter of law and grant the summary judgment motion. *See Anderson*, 477 U.S. at 248 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

## III. DISCUSSION

### A. PricewaterhouseCoopers's ERISA Claim

A health-plan administrator may bring a civil suit "under 29 § 502(a)(3) of ERISA . . . to obtain other appropriate equitable . . . to enforce any provisions of . . . the terms of the plan." *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 361 (2006) (citing 29 U.S.C. § 1132(a)(3)) (internal quotation marks omitted). Under the traditional rules of equity, a party may follow a portion of the recovery into the hands of beneficiary as soon as the settlement fund was identified and impose either a constructive trust or equitable lien on those funds. *Id.* at 365 (citing *Barnes v. Alexander*, 232 U.S. 117, 123 (1914)).

To obtain relief under 29 § 502(a)(3) of ERISA, a health-plan administrator must be "a (1) 'fiduciary' that is (2) seeking 'appropriate equitable relief' (3) 'to enforce the terms of the plan.'" *Quest Diagnostics v. Bomani*, No. 3:11-cv-951(MPS), 2013 WL 3148651, at *5.

### 1. PricewaterhouseCoopers's Ability to Seek Equitable Relief

PricewaterhouseCoopers argues that all health benefits provided by its staff medical plan are self-funded, with the source of benefits being assets of PricewaterhouseCoopers. Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, ECF No. 52 ("Mem. of Law in Supp. of Pl.'s MSJ."), at 7. PricewaterhouseCoopers asserts that the staff medical plan, which acts as the ERISA plan document, establishes that the plan is self-insured, plan contributions come from employees and PricewaterhouseCoopers, and the source benefits are assets of PricewaterhouseCoopers. *Id.* (citing Summary Plan Description, ECF No. 52-3, at 138). PricewaterhouseCoopers also asserts that the plans status is confirmed by PricewaterhouseCoopers's Director of National Benefits. *Id.* (citing Mayerson Aff.). Finally, PricewaterhouseCoopers argues that Defendants' contention that the plan benefits were funded by insurance is not based on any facts.

Defendant does not contest that PricewaterhouseCoopers offers a self-funded plan.

The Court agrees.

First, PricewaterhouseCoopers has provided admissible evidence that the PricewaterhouseCoopers plan was an ERISA plan for which PricewaterhouseCoopers is a fiduciary within the meaning of 29 § 502(a)(3). *See* Mayerson Aff. at ¶¶ 3–5; Copeland Aff.; *see also* Summary Plan Description, ECF No. 53, at 138. Mr. Mayer was also a participant in the health benefit plan. Copeland Aff. at ¶ 3. And PricewaterhouseCoopers paid $44,167.59 in medical bills for Mr. Mayer related to his May 11, 2015 automobile accident injuries. Medical Payment Summary, ECF No. 52-10; Copeland Aff. at ¶ 11.

Second, PricewaterhouseCoopers seeks equitable relief for repayment of the $44,167.59 in medical bills paid, *see* Am. Compl. 16–18; 20–22, because Mr. Mayer received a $250,000

personal injury settlement related to his automobile accident, *see* Am. Answer at ¶ 11 ("Admitted that Mayer v. Long case settled for $250,000"). *See Sereboff*, 547 U.S. at 361 ("under 29 § 502(a)(3) of ERISA . . . to obtain other appropriate equitable . . . to enforce any provisions of . . . the terms of the plan.").

Third, PricewaterhouseCoopers seeks this relief to "enforce the terms of the plan." *Id.* at 362–63 (holding that medical bill reimbursement under ERISA was equitable relief because the "nature of the recovery" was a claim of "specifically identifiable funds" within the beneficiary's control).

Accordingly, PricewaterhouseCoopers properly seeks equitable relief under ERISA.

### 2. PricewaterhouseCoopers's Right to Reimbursement for Medical Expenses

PricewaterhouseCoopers argues that it is entitled to equitable relief under ERISA. Mem. of Law in Supp. of Pl.'s MSJ. at 8. According to PricewaterhouseCoopers, the United States Supreme Court's holdings in *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356 (2006) and *McCutchen v. U.S. Airways*, 133 S. Ct. 1537 (2013) establish that self-funded ERISA plan is entitled to reimbursement from the proceeds of a third-party settlement as an equitable remedy under the ERISA statute. *Id.* at 8–10. Finally, PricewaterhouseCoopers cites other district courts within the Second Circuit for the proposition that an ERISA plan is seeking appropriate equitable relief when pursuing reimbursement of benefits already paid to the plan beneficiary. *Id.* at 10–11 (citing *Quest Diagnostics v. Bomani*, No. 3:11-cv-951 (MPS), 2013 WL 3148651 (D. Conn. June 19, 2013); *Fishbein v. Miranda*, 670 F. Supp. 2d 266, 276–77 (S.D.N.Y. 2009); *Borden v. Blue Cross & Blue Shield*, 418 F. Supp. 2d 266, 273 (W.D.N.Y. 2006)).

Next, PricewaterhouseCoopers asserts that ERISA preempts Connecticut's anti-subrogation statute, rendering it inoperable in this reimbursement action. *Id.* at 11 (citing *FMC*

*Corp. v. Holliday*, 498 U.S. 52, 58 (1990)). Because of the breadth of ERISA's preemption clause, PricewaterhouseCoopers argues that Connecticut's anti-subrogation statute regulating insurance does not reach PricewaterhouseCoopers's self-funded plan. *Id.* at 12–13.

Finally, PricewaterhouseCoopers contends that Defendants have misinterpreted the plan's Form 5500, which has no bearing on the funding status of the medical plan. *Id.* at 13. Because the Form 5500 is merely an administrative filing with the United States Department of Labor, PricewaterhouseCoopers argues that the form has no practical effect on the plan's self-funded administration. *Id.* at 14. PricewaterhouseCoopers also argues that its benefit payments on behalf of Arthur Mayer were made with PricewaterhouseCoopers's own assets, consistent with the self-funded plan. *Id.* at 16.

In response, Defendants argue that PricewaterhouseCoopers has failed to disclose any experts that would be able to prove that medical benefits paid by the PricewaterhouseCoopers plan were related to Mr. Mayer's May 11, 2015 automobile collision injuries. Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, ECF No. 59 ("Mem. in Supp. of Def.'s MSJ."), at 2. Defendants argue that the medical bills paid by the PricewaterhouseCoopers plan are not connected to the Mr. Mayer's auto collision injuries unless there is expert testimony to establish the connection between the injuries and third-party liability. *Id.* at 3. Moreover, Defendants assert that Mr. Mayer had a pre-existing condition that was the actual cause of some of the medical bills paid by the PricewaterhouseCoopers plan. *Id.*

Defendants also argue that PricewaterhouseCoopers is only entitled to subrogation from the medical expenses related to the automobile collision and that there is no evidence presented by PricewaterhouseCoopers that Mr. Mayer received economic damages for his medical expenses in the $250,000 settlement. *Id.* at 5. Rather, Defendants claim that the entirety of the

settlement was for non-economic damages related to cervical injuries, which means that the settlement total was not for economic damages from the medical bills. *Id.* at 6.

The Court disagrees.

In *Sereboff*, the U.S. Supreme Court permitted a health-plan administrator to bring a suit under 29 § 502(a)(3) of ERISA for medical expense reimbursement. There, Mid Atlantic paid $74,869.37 in medical expenses for married beneficiaries after they were injured in a car accident. *Sereboff*, 547 U.S. at 360. Under the plan's coverage provisions, the plan paid the couple's medical expenses. *Id.* The Sereboffs later filed a state-law tort action against several third parties for compensatory damages for injuries suffered during the accident. *Id.* In anticipation of proceeds from the suit, Mid Atlantic sent letters throughout the next two years of litigation asserting a lien on any proceeds and detailing the medical expenses already paid by the health plan. *Id.* The case eventually settled for $750,000 and neither the Sereboffs nor their attorney reimbursed Mid Atlantic. *Id.*

The Supreme Court held that Mid Atlantic's medical bill reimbursement under ERISA was equitable relief because the "nature of the recovery" was a claim of "specifically identifiable funds" within the Sereboffs' control—e.g. a portion of the settlement received by the claim beneficiaries. *Id.* at 362–63 (internal quotation marks omitted). Because a "contract to convey a specific object" not yet acquired "creates a lien" on that object as soon as "the contractor . . . gets title to the thing," *see id.* at 363–64 (quoting *Barnes*, 232 U.S. at 121) (internal quotation marks omitted), Mid Atlantic could bring a reimbursement action under 29 § 502(a)(3) seeking funds that its beneficiaries had promised to turn over.

Here, as in *Sereboff*, the basis for PricewaterhouseCoopers's claim is equitable. For an ERISA action to be rendered equitable, the plan must seek "specifically identifiable funds that

were within the possession and control" of the beneficiaries—not recovery from that beneficiary's "assets generally." *Sereboff*, 547 U.S. at 362–63. As the Second Circuit has noted, "*Sereboff* stands for the proposition that if the parties to a contract agree to the transfer of property . . . [t]he agreement is sufficient to identify the property or funds subject to a lien. This property becomes recoverable in equity." *Central State, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 156 (2d Cir. 2014).

PricewaterhouseCoopers seeks reimbursement for $44,167.59 medical bills paid related to Mr. Mayer's May 11, 2015 automobile collision. *See* Am. Compl. at ¶ 9; Copeland Aff. at ¶ 11; Medical Payment Summary, ECF No. 52-5, at 4. Because of that auto collision, Mr. Mayer received a $250,000 settlement for state-law tort claims. Am. Answer at ¶ 11 ("Admitted that Mayer v. Long case settled for $250,000"). Under the terms of the plan agreement, PricewaterhouseCoopers therefore had the right to attach an equitable lien to Defendants' settlement funds, when they obtained title to that fund, making the nature of PricewaterhouseCoopers's underlying remedy equitable and immediately enforceable. *See* Summary Plan Description, ECF No. 52-3, at 109.

Accordingly, PricewaterhouseCoopers has properly placed an equitable lien on Defendants funds for reimbursement for medical expenses already paid. *See Thurber v. Aetna Life Ins. Co.*, 712 F.3d 654, 665 (2d Cir. 2013) ("In the context of an equitable lien by agreement, . . . all that matters is that the beneficiary did, at some point, have possession and control of the specific portion of the particular fund sought by the insurer.").[1]

---

[1] PricewaterhouseCoopers also properly raises the argument that Defendants' Motion for Summary Judgment could be dismissed for failure to comply with local rules 56(a)(1) and 56(a)(2) regarding statements of material facts. *See* Plaintiffs' Consolidated memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Response to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 67, at 1–2; *see also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules . . . [and] is not required to consider what the

### B. Defendants' Counterclaims

On March 12, 2019, Defendants filed an Amended Answer to Plaintiffs' Amended Complaint. In the Amended Answer, Defendants made two counterclaims against Plaintiffs regarding: (1) a failure to timely provide coverage information in violation of 29 U.S.C. § 1132(c), arguably entitling Defendants to $100.00 per day, in excess of Plaintiffs' claim; and (2) an entitlement by Mr. Gaston to an offset of one-third of any recoverable subrogation in shared attorney's fees. Am. Answer at 3–4.

On April 10, 2019, PricewaterhouseCoopers moved for summary judgment on Defendants counterclaims. Pls.' Mem. in Supp. of Counterclaim MSJ.

The Court will now address the timeliness of any requests made of PricewaterhouseCoopers and the viability of any attorney fee offset to Mr. Gaston.

#### 1. The Timeliness of the Timeliness Claim

While ERISA allows for causes of action by health plans, it does not have a statute of limitations. *See Burke v. PricewaterhouseCoopers LLP*, 572 F.3d 76, 78 (2d Cir. 2009). And "[b]ecause ERISA 'does not prescribe a limitations period for [Section 502(c)(1)] actions . . . the applicable limitations period is that specified in the most nearly analogous state limitations statute.'" *Brown v. Rawlings Fin. Servs., LLC*, 868 F.3d 126, 128 (2d Cir. 2017). As a result of its similarity to civil statutory penalties in Conn. Gen. Stat. § 52—585, courts in this Circuit have applied Connecticut's one-year statute of limitations period. *See id.* at 130 (applying Connecticut's one-year statute of limitations period to an ERISA non-responsiveness penalty claim); *Tritt v. Automatic Data Processing, Inc.*, No. 3:06-cv-2065(CFD), 2008 WL 2228841, at *6–7 (D. Conn. May 27, 2008) (same).

---

parties fail to point out in their Local Rule 56.1 statements . . . ." (internal quotation marks omitted)). The Court nevertheless will address the substantive bases for this case's dismissal.

PricewaterhouseCoopers argues that Defendants' timeliness claim is time-barred because the statute of limitations for Defendants' timeliness claim would begin to accrue on May 26, 2017, thirty days after Attorney Gaston's last request for the Form 5500. Pls.' Mem. in Supp. of Counterclaim MSJ. at 2. *Id.* Defendants, however, did not file their counterclaim until February 20, 2019, which is beyond the one-year statute of limitations. *Id.*

Alternatively, PricewaterhouseCoopers argues that Defendants failed to submit a written request to PricewaterhouseCoopers as the plan administrator. *Id.* at 4. Under the terms of ERISA, PricewaterhouseCoopers argues that Defendants may only seek civil penalties when the written request is made to a plan administrator that refuses the information request. *Id.* at 5. Because the duty cannot be transferred to a third-party administrator, Defendants' letters to Optum, who is not the plan administrator, would not trigger the ERISA civil enforcement provision. *Id.* at 6.

Even if the request was addressed to the proper part, PricewaterhouseCoopers argues that Defendants never specified which Forms 5500 he wanted other than the courtesy copy provided by Optum. *Id.* at 6–7.

In response, Defendants argue that Optum functioned as an agent of the PricewaterhouseCoopers plan, which makes PricewaterhouseCoopers subject to the $100.00 per day penalty for non-response. Defs.' Response to Pl.'s Counterclaim MSJ. at 3. Again, Defendants argue that this total exceeds the amount of medical bills for which PricewaterhouseCoopers seeks reimbursement. *Id.*

The Court disagrees.

Defendants last sent a Form 5500 request letter on April 26, 2017.[2] *See* Mem. in Supp. of

---

[2] At oral argument, Mr. Gaston argued that his February 16, 2018 letter to Theodore Tucci, counsel for PricewaterhouseCoopers, was the last communication from which the statute of limitations should run. *See* Ex. E, ECF No. 76-5. Yet Mr. Tucci responded to this letter on February 20, 2018. In the Second Circuit, a damages award for refusal to comply with a document request are discretionary and "often depends on whether the administrator's

15

Def.'s MSJ. at 7. The statute of limitations therefore would begin to accrue, at the latest, on May 26, 2017, thirty days after Attorney Gaston's last request for the Form 5500. As a result, with a one-year statute of limitations period, any claim for a civil penalty would have to be filed within one year of that date. *See Brown*, 868 F.3d at 13.

But Defendants did not file their counterclaim until they filed an Answer on February 20, 2019, *see* Answer with Special Defenses, Counterclaim against Plaintiffs, ECF No. 56, which is beyond the applicable one-year statute of limitations deadline.

Accordingly, Defendants' civil penalty claims are time-barred, and PricewaterhouseCoopers's motion for summary judgment should be granted on that claim.[3]

### 2. Attorney Fee Offset

PricewaterhouseCoopers also argues that Defendants are not entitled to any attorney fee offset under the common fund doctrine. Pls.' Mem. in Supp. of Counterclaim MSJ. at 7. PricewaterhouseCoopers contends that when an ERISA plan's language sets out unambiguous terms of subrogation, those terms must be enforced as written, regardless of alleged equitable defenses. *Id.* at 8.

---

delay resulted from bad faith, further suggesting that Section 502(c)(1) is meant to punish an administrator's failure to follow statutory duties." *See Brown*, 868 F.3d at 129. While Defendants may have wanted additional information, without more in this record, this is insufficient to create a genuine issue of fact for trial as to PricewaterhouseCoopers' alleged bad faith. *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011) ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial." (citations omitted)).

[3] In any event, PricewaterhouseCoopers is the plan administrator and Optum is not an agent of the plan. *See* Summary Plan Description, ECF No. 52-3, at 120 ("The relationship between the Claims Administrator and the Plan Administrator is a contractual one and the Claims Administrator is not an entity of the Plan Administrator."). Because Optum "is not 'the person specifically so designated by the terms of the instrument under which the plan is operated,' 29 U.S.C. § 1002(16)(A)(i), it is not a plan 'administrator' within the meaning of ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1)." *See Kraus v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008); *see also Giordano v. Thomson*, No. 03-CV-5672 JS AKT, 2007 WL 1580081, at *4 (E.D.N.Y. May 29, 2007) ("A plan administrator may not be held liable for requests directed to someone other than the administrator."). Accordingly, PricewaterhouseCoopers's motion for summary judgment would be granted, even if the counterclaim was not time-barred.

PricewaterhouseCoopers argues that the summary plan description states that "[n]o court costs or attorneys' fees may be deducted from the Plan's recovery without the Plan's written consent and the Plan is not required to participate in or pay court costs or attorneys' fees to the attorney hired by you or your dependents to pursue damages or personal injury claims," and expressly prohibited common fund doctrine rights. *Id.* (citing Summary Plan Description, ECF No. 52-3, at 109). The PricewaterhouseCoopers plan thus was not required to participate in the *Mayer* litigation or pay court costs or attorney's fees to Defendant Gaston. *Id.* at 9.

In response, Defendants argue that two Illinois cases to support the quasi-contract claim that Mr. Gaston should receive one-third in attorney's fees, independent of the benefit plan based on equitable considerations. Defs.' Response to Pl.'s Counterclaim MSJ. at 6–7.[4]

The Court disagrees.

In *McCutchen*, the U.S. Supreme Court stated that "if the agreement governs, the agreement governs." 569 U.S. at 99. ""Even in equity, when a party sought to enforce a lien by agreement, all provisions of the agreement controlled." *Id.* at 100. There, a beneficiary suffered serious injuries in a car accident. *Id.* at 92. As a participant in US Airways self-funded plan, the plan paid $66,866 in medical expenses arising from the accident on the beneficiary's behalf. *Id.* The beneficiary retained counsel and eventually recovered $10,000 from the other driver and $100,000 from the beneficiary's automobile insurance provider. *Id.* After learning of the settlement, US Airways sought reimbursement of the medical expenses under 29 § 502(a)(3) of ERISA, while the beneficiary claimed that plan could not reap the benefits of the settlement because, among other reasons, it had not participated in the lawsuit. *Id.* at 93. The Supreme Court upheld US Airways' entitlement to reimbursement under the clear terms of the plan. *See*

---

[4] To the extent that Mr. Gaston is arguing that he is not liable for attorneys' fees incurred by PricewaterhouseCoopers in bringing this action, the issue is not yet before this Court and will not be addressed here.

17

*id.* at 101 ("The plan, in short, is at the center of ERISA. And precluding McCutchen's equitable defenses from overriding plain contract terms helps it to remain there.").

Thus, because ERISA's principal function is to "protect contractually defined benefits." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985), the Court must strictly construe the terms of the PricewaterhouseCoopers plan.

Here, the unambiguous language of the summary plan description specifically states that attorney's fees would not apply to medical payment reimbursements. According to the summary plan description,

> the recipient of any such recovered amounts shall hold the funds in constructive trust for the Plan . . . [and] [n]o court costs or attorneys' fees may be deducted from the Plan's recovery without the Plan's express written consent and the Plan is not required to participate in or pay court costs or attorneys' fees to the attorney hired by you or your Dependents to pursue damages or personal injury claims. No so-called 'fund doctrine' or 'common fund doctrine' right shall defeat the Plan's rights.

Summary Plan Description, ECF No. 52-3, at 109. While the terms of the plan in *McCutchen* were "silent on the allocation of attorney's fees, and in those circumstances, the common-fund doctrine provides the appropriate default," *see* 569 U.S. at 101, there is no such issue with this contract's terms.

The common-fund doctrine thus does not apply in this case. *See McCutchen*, 569 U.S. at 105 ("Only if the [health-benefit] plan expressly addressed the costs of recovery would it alter the common-fund doctrine."); *see also Quest Diagnostics v. Bomani*, 3:11 No:11-cv-951 (MPS), 2013 WL 3148651, at *2 (D. Conn. June 19, 2013) ("Unlike the plan in *McCutchen*, the plain language of the plan in this case is unambiguous, leaving no room for equitable defenses to operate.").

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** PricewaterhouseCoopers's motions for summary judgment as to the medical bill reimbursements and dismissal of the counterclaims and **DENIES** Defendants motion for summary judgment.

The clerk of the court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of May 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE